Case number 15-5806. Argument not to exceed 15 minutes per side. Mr. David Commissar, you may proceed for the appellant. Good morning. My name is David Commissar. I represent the defendant in the appellant, Juan Collazo, in this matter. The West Tennessee Drug Task Force are like pirates who will do anything to stop a ship in search for bounty. They are not lawful, they make up false narratives, and they hide their indiscretions. Is this in the record or are you testifying in front of us? This is in, I will show you, it is in the record. I was using a little bit of... Iron hats instead of state trooper things? On October 9, 2013, Mr. Collazo, an Hispanic driving on Texas plates, is driving down Interstate 40 near Memphis and the Drug Task Force agent, with his canine dog in the vehicle, is at mile marker between 42 and 43. My client passes by, moments later, Task Force Agent Hill speeds off, reaching speeds between 80 and 85 miles an hour. Testifies he was not after Mr. Collazo as he was heading to his fellow officer, Trooper Montgomery, and observes him from the distance of 320 feet, more than a football field, that he was following a tractor-trailer truck too closely. He said he estimated it was about four car lengths away from a football field. He later says, when he is cross-examined, that he really wasn't sure how close that he was, and the word he used, he eyeballed it. Eyeballing it is not an objective standard, it's a subjective standard, and one that is not permitted when you have to articulate facts as to why you stopped someone for following too closely. What has happened in Tennessee, and I assume other jurisdictions as well, the way the following too closely statute reads, it doesn't give any hard-line measurements. It's just what's reasonable and prudent. And so this officer, in an effort to try to sell the stop, in his report says, you know what, Mr. Collazo was not taking, in fact, of the construction conditions that were going on in the area. But when cross-examined, he admits, well, there really wasn't any construction area in this whole period. No signs of it, no construction, nothing. He later goes on to say, I would have stopped him if he was 160 feet away, more than nine car lengths. He testifies that he was taught that how you determine whether or not someone is following too closely or not is a car length for each 10 miles an hour. He testifies that he would have stopped him at a distance of 160 feet, which he would have had to have been traveling at more than 90 miles an hour. The bottom line to Officer Hill's testimony is what he said. I just eyeballed it. Now, this is a man that does not know. He's out there supposedly to deal with the law enforcement of traffic enforcement. That's not his real reason why he's out there. He doesn't know the distance between the white stripes, which is 10 feet. He doesn't know the distance between each stripe, which is 30 feet, so it's 40.  That's the Federal Highway Administration guideline, but the record doesn't reflect those. Yes, it does, Your Honor, in that Trooper Montgomery did testify to that in this hearing. It is in the record. I'll be happy to send a letter and give an actual cite in the transcript. But Officer Trooper admits that, yes, it's 10 feet, give or take an inch or two, and the distance between the two is 30 feet. And he talked about the highway traffic, so that is in the record in this case for sure. But the lies of these two officers don't end there. Lies? Is that what he said? Lies. That's a strong word. All right. All right. So let me... On these credibility issues that were resolved by the court below and to reverse, we have to find there was clear error. Yes, Your Honor. How in the world would we do that just based on what you're saying here? Because I think if you look at the record, you read the record, you watch the video, the video of this stop is submitted, and you can watch for yourself. That's the beauty of this. But I'm given the video. Yes, you have it. It's been brought up. We got it. We've got that in the record? Yes, it's in the record. I'll watch the video. Okay. So the video is in the record. And interesting in this case, Judge Campbell, when it came to the issue of the credibility of whether these two defendants, my client and his wife, gave written consent, he punted on that. He didn't address that issue. And one of the reasons I believe that he chose not to is because in the report, the officers say they gave written consent. In the discovery packet, there was a note from the federal government, written consent. But it wasn't in there when I asked for it. It didn't exist. And then they testified later, well, we thought we got written consent. The task force agent in charge in this case, in his deposition, stated I thought they got written consent. It wasn't there. In their report, as to the line, Judge Griffin, that you have serious concerns about my using that language, that strong language, when they were arrested, there was no mention of a prescription bottle for suboxone anywhere in the written reports. It was not in the discovery. They didn't turn it over. So you have Trooper Montgomery saying there wasn't a prescription bottle. Then he said there was. Then he made up three different stories that my client's wife had allegedly said to him on different occasions. That's all in the brief. That's all in the record. And I think if you look at the standard of review, when you look at the record as a whole, that you will find that the district court Campbell was in error. The facts of this case are mind-boggling on the stop, the fictitious pretense upon pretense of, oh, it's going to take me 20 minutes to write a fake ticket. It was all a ruse to buy more time. This court has opined that if there's probable cause on, you think there's drug in a car, and here's the car that's been stopped, and right over here is a car with a dog in it that's trained to sniff drugs, and yet he never takes the dog out? Doesn't make any sense. I'd almost say that'd be against your position. You'd think that if they really were stopping because they thought he had drugs, they'd immediately have the dog go sniff because he certainly would have sniffed the drugs. You would have thought that. But yet there's testimony in the record of Officer Hill thinking they were acting suspicious. We thought that there was drugs because the story was it. They thought that all along. And he gave no good reason. The question wasn't he just said, no, I never took the dog out. Hill testifies at about minute 20, 21. He shakes your client's hand and says, you're free to go as far as I'm concerned. Absolutely. And yet he takes it. He takes, I'm going to go get this ticket. I'm going to write you a courtesy citation ticket. Three minutes into the record, almost 19 minutes and five seconds left, he comes in and says, here you go. All that time was to stall. I thought the record was that he had called into dispatch to check out, is your license, the man's license valid, and are there any outstanding warrants, and that was taking time to get, and he was waiting for dispatch to get back to him. That's what he claims. That's what he claims. But he kept coming back and saying, I want this, I got this ticket. He kept coming back to him and saying, it's just going to take a few minutes. We're having trouble getting, our phones aren't working right here. And I see that my time is up. Well, basically you're arguing credibility, that the trial judge aired his credibility determination as to the officers, right? And you want us to reverse them on his credibility determination? Not just the credibility determination. Well, you argued right today. He lied, it's obvious he lied. Yes. And if you look at the video, the video supports that. It's pretty hard for us to reverse credibility determinations, is it not? It is very hard. I can't think of a case where I've done it. But there are many cases that this court has reversed on the actual stop, on a failure to. . . I didn't hear you really argue that, though. Because I wrote it so well in the brief, Your Honor. Okay. All right. Thank you. Very good. May it please the Court. I'm Van Vinson. I represent the United States in this matter. As to the first point by, well, not necessarily the first, but the point by defense counsel that Trooper Montgomery testified that those were the distances, the United States submits that's incorrect, according to the record. If the court were to go to record entry number 104, which is the transcript of the suppression hearing, at page ID numbers 487 through 490, the court will see that Mr. Commissar asked Trooper Montgomery if he was familiar with the highway manual. He said no, he would have to go look it up. And he said, but it gives the distances, and Trooper Montgomery actually states that you would actually have to go out to the interstate to measure it, to know the actual distance between the lines. That was my recollection. Yes, sir, and that's specifically during those, specifically on page 490. The question is, let me try to ask it this way. This line, the standard, which you know is 10 feet, correct? Answer, I don't know that. Question, you talked about it in a meeting yesterday that the line is 10 feet long, supposed to be the standard, correct? Sir, I didn't talk about how long the lines were supposed to be. It was asked me, and I said there is no way to tell unless you take the measurement out there and measure it. So as to that point, I think what Trooper Montgomery, and I believe later, but he discusses that lines are different at different places, but I may have that just in my mind from prepping the witnesses. I know I'll just look those specific pages up at this time. The United States submits that there was probable cause for the stop of the vehicle for following too closely, that the length of the stop was not excessively long, lasted 21 minutes. During that time period, the Officer Hill and both Hill and Montgomery developed further information, the suspicious activity of Ms. Collazo, her movements. If the courts watch the film, you can see it from the time the trooper stops behind them. When they pull over, you can see her hands at that point moving, and she's flipping her hair and doing all sorts of things even before the officer walks up to the car. Then at the time of being up at the vehicle, the conflicting stories about where they were going, that they were going to visit her father-in-law, pardon me, her father, his father-in-law. But they didn't know what hospital. Juan Collazo said it was in a hospital. Cynthia Collazo said he's at a house, but she didn't know the address. All those instances that are cited by the district court as well as by the United States since brief gave rise to reasonable suspicion of criminal activity being afoot. And then when once Ms. Collazo disclosed that she had the substance with her, that gave rise to the probable cause, which happened right at about the 21-minute mark also because Trooper Montgomery walked up at 17 minutes and 21 seconds, I want to say. And he said it was 3 to 5 minutes when she made that statement, which would put it at 20 minutes to 21 minutes. So is it your position that regarding the traffic stop, our standard is reasonable suspicion? Well, I believe the circuit actually sometimes uses reasonable suspicion and probable cause. Which one applies here? I think both would apply here. We can meet both standards is what I'm trying to articulate, Your Honor. Which one should apply? I think reasonable suspicion, Your Honor. But I know that the court, I know that they're varying case laws. Well, the officer for a traffic stop, particularly looking at it and following too closely, is it reasonable based on all the things that an officer knows at that time to make that stop? And here, based on their training, and even this circuit has given different opinions as to the use. Is the driver manual appropriate to use? Is it not appropriate to use? So to say that it's unreasonable for the stop or not based upon probable cause, the government would submit it would be incorrect. So the officer's actions based on even the law of the circuit, based on which case you look at, is correct as even using the manual. And so probable cause exists as well as reasonable suspicion of the violation. The Tennessee statute is very loose, isn't it? It does not define what the reasonable and prudent distance is. That's what most statutes, I mean, most state statutes that have knowledge and don't define it. I mean, that's nothing unusual, isn't it? No, sir, and there's case law that discusses that it depends, even the manual discusses that weather conditions, traffic flow, accidents, all things can come into play with that, and thus reasonable that the statute is more broad to be able to apply to different circumstances. What about the fact, I mean, both Hill and Montgomery are drug enforcement, part of the task force, right? Yes, sir. Probably, Mr. Commissar has a point, they probably are really cruising to look for drug dealers in particularly suspicious Hispanics from Texas. Is that a problem for you? Your Honor, I strongly take the position that this had nothing to do with the defendant's race. So to say suspicious, with all due respect, suspicious Hispanics from Texas, I don't believe that these officers, that there's anything in the record Is that what you're saying? Well, I don't think that just being from Texas, and I don't think there's anything in the record to support that Trooper hit, pardon me, Agent Hill's or Officer Hill's testimony was that he was behind the vehicle, didn't even see who was inside until he walked up. Of course, he ran the tag, it's a Texas tag, but I don't believe that there's any, the United States submits that there's nothing in the record to suggest that the officer or Trooper Montgomery had stopped, or even, they couldn't even, we pulled all the traffic violations to establish the standard, and the defense counsel agreed he couldn't establish the standard for a selective enforcement argument. So there's nothing in the record for these officers to dictate that they're stopping only Hispanics or predominantly Hispanics or anything along those lines. Or drivers with Texas license plates? They're not pirates, they're not stealing money or valuables from these people? No, sir, the only cannon shots fired... Actually, what the pirates did was they stole money and goods from ships that were going by, and the pirate analogy isn't quite apt, I don't think. I don't, I would submit that it's not, but I think the only cannon shots fired here were by the defense counsel. Now, and their motive, say they're there, I mean, obviously they're there to prevent drug trafficking, but do we look at their subjective intent as to what they hope to get, or do we look at the objective evidence and whether it supports reasonable suspicion or probable cause for the stop? It is the objective evidence, even if the stop's... Their subjective intent's irrelevant, right? Correct, Your Honor. Anything further? No, not at all. I'll take my leave, then. Thank you. Thank you. Mr. Counsel, do you retain any time for rebuttal? No, Your Honor, I did earlier and I forgot to do it. If I could just give the court the sight as to where Officer Montgomery has testified, as to the distance, because I think that's an issue, if I could. I don't know if... You have five minutes. Oh, you've got five minutes. I asked her, but I realized when I got up here I didn't. Well, great. She saved me. You have five minutes. Well, thank you, Your Honor. First, I want to cite to the record where Trooper David Montgomery agreed that the length of the white stripe is 10 feet and the distance between the white stripe is 30 feet. That's in the technical record 105, page ID number 528 and 529. And based on the questioning that this court has given me, I think that that will establish the actual distance that was between these stripes. So when Officer Hill, because his testimony has got to be the one that you have to base whether or not he had any objective standards on which to base the stop. And it's just too far away. It is impossible for a man who is more than a football field behind this vehicle, when he testifies he was four lengths away. It cannot be done. And I want to suggest to the court that these officers were equipped with the following equipment. They had the cam, which we have. It's supposed to have audio on it. The audio wasn't working. It's supposed to have speed on it. The speed wasn't hooked up. He did have a working radar gun. Officer Hill did. Which he did not use. And then he had the drug dog, which he did not use. Officer Montgomery, when he comes, he has on him an audio recorder. All he's got to do, it's on his body, all he's got to do is press it. When asked, why didn't you use that so we could hear what was saying or whether you could find probable cause or when these people allowed you to have consent, he said, well, two reasons. If I press the button, I have to go 50 miles to download it, and then when I download it, it becomes evidence. That's what he testified to. These crime-fighting tools are great for law enforcement when it shows the crime. They are horrible for law enforcement officers who really don't uphold the higher standards. And perhaps Judge Griffin and I should apologize for that pirate analogy, but it was the manner in which these officers chose not to use the tools that they're given. Are they required to use them? No, they're not required to use them. Now, there's a sea change in this country to do that. It's going on right now. But they're not required to. But it does beg the question. So when they don't, the point is they didn't use it because it didn't fit their narrative. It didn't show what they testified to. The video, we're left with a silent film. And the problem with this officer is normally when you press that button, it goes back 30 seconds. In this case, lucky for Mr. Colosio, it went back 36 seconds. So you can see in that video, wow, how can he say he's following too closely from there? Well, you say that. I saw the video. It looked like when it first came on, he's fairly close behind that tractor-trailer. Then it starts slowing down. Because he's going, according to his testimony, when that comes on, 80 or 85 miles an hour, he's so far away. When you look at the video, when you're that far away, items appear closer. And then as you pull closer, you see the distance. And then when you can actually stop it and count, and you count the lines, 1, 2, 3, 4, 5, 6, I mean 1, 2, 3, at least 4, 160 feet, he just wasn't close enough. Well, but the problem is, see, they don't have to prove that your client is actually guilty of the offense. The only reason it's relevant is whether there's probable cause to believe that the offense occurred. And that's a very low standard. It is a low standard. You're saying, okay, this isn't enough to establish guilt. Well, that's not what they're doing. I agree. Is it probable cause that there may be a violation? There is not. Why not when it kind of looks like that? Because from 100 and 320 feet away, where he testifies, where he made this, there's no way that you can establish probable cause. There's no reasonable basis. And to couple it with these false narratives that he uses to try to support it. So for those reasons, I would ask that this court reverse the trial court's decision on the suppression of evidence. Thank you. Thank you. Mr. Commissar, I know you took this case pursuant to the Criminal Justice Act, and I know you do that as a service to the court and our system of justice, so we'd like to thank you for that. Thank you, Your Honor. The case is submitted. There being no further cases for our…